## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MATTHEW P. DEC and ) 
LISA A. (WEISENSTEIN) DEC, ) 
                               ) 
             Plaintiffs,             )           Civil Action No. 10-301 
                               ) 
             v.                     )           Judge Ambrose 
                               )           Magistrate Judge Bissoon 
JILL DOUBLE, *et al.*,                ) 
                               ) 
             Defendants.        ) 

## ORDER OF DISMISSAL

### BACKGROUND

On June 4, 2010, the Court issued an Order (Doc. 10) directing Plaintiff(s) to show cause why this case should not be dismissed for their failure to prosecute and/or to comply with the Court's May 5th Order (Doc. 9). On June 7, 2010, Plaintiff Matthew Dec filed two documents, the first entitled, "Motion for Continuance in Civil Case [10]-301 and *Sua Sponte* Order of Court" (Doc. 11), and the second, "Motion to Extend Timeline Filing *In Forma Pauperis* and Refile Amended Complaint (And *Sua Sponte* Injunction to Be Placed Upon FBI) [sic]" (Doc. 12). Although Mr. Dec purports to have filed these documents on behalf of himself and his wife, Ms. Dec has signed neither document. *See* Docs. 11 & 12 (signed by Mr. Dec, not Ms. Dec). Given that the show cause deadline expired on June 14, 2010, the Court must presume that these documents constitute Plaintiff(s)' only responses to the June 4th Show Cause Order.

In his submissions, Mr. Dec explains the events surrounding his failure to timely comply with the May 5th Order:

> [In early May, 2010], Plaintiff . . . attempted to have state police
> investigate and press charges against [District Magistrate]
> Haggerty for tampering with public documents . . . . [The state
> police] refused to do their jobs by both lying to Plaintiff as well as
> ignoring [him] . . . .
>
> On 5-13-10[,] Plaintiff once again requested [that the state police]
> perform their job; Plaintiff was cut off; Plaintiff called back and
> told them he may as well call internal affairs[, and] was told to
> 'go do whatever you need to . . .' in a disrespectful tone [before
> being] disconnected again . . . .
>
> Plaintiff, having [drunk] a half case of beer[,] became enraged,
> called back, and stated, '. . . what you worthless idiots need to do is
> go parade about outside until someone takes a high powered rifle
> and shoots your worthless commie assess[,]' and hung up.

Doc. 12 at 2. Thereafter, Plaintiff was arrested by the Butler Township Police, who found him

"at his house passed out on the bed." *Id.* Plaintiff has been charged with harassment and making

terroristic threats. *See* Doc. 11 at 2.

As of the time of Mr. Dec's submissions, he remained incarcerated at the Butler County

Prison. *See* Doc. 12 at 4. Plaintiff requests a "liberal extension of time," of unspecified duration,

to correct the deficiencies identified in the May 5th Order, and he asserts that his wife is afraid to

participate in this litigation for fear of police retaliation. *See id.*; *see also* Doc. 11 at 5.

**ANALYSIS**

An action may be involuntarily dismissed based on a plaintiff's failure to prosecute

and/or comply with a court order. *See* Fed. R. Civ. P. 41(b). In determining whether dismissal is

appropriate, the Court considers:

(1)     the extent of the party's personal responsibility;

(2)     the prejudice to the adversary caused by the failure to meet
        scheduling orders and respond to discovery;

(3)     a history of dilatoriness;

(4)     whether the conduct of the party was willful or in bad faith;

(5)     the effectiveness of sanctions other than dismissal, which entails an
        analysis of alternative sanctions; and

(6)     the meritoriousness of the party's claims or defenses.

Briscoe v. Klaus, 538 F.3d 252, 258 (3d Cir. 2008) (quoting Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 868 (3d Cir.1984)).  "[N]ot all of the *Poulis* factors need be satisfied in order to dismiss a complaint."  *Id.* at 263 (citation to quoted source omitted).  Rather, the Court balances the several factors to determine whether a dismissal is justified.  *See id.*

   *Poulis* factors (1) and (4) favor a dismissal here.  By his own admission, Mr. Dec's failure to comply with the May 5th Order, and otherwise to promptly litigate this case, has resulted from his speaking threatening language to police officers while in a highly intoxicated state. *See* discussion *supra*; *see also id.* (at scene of arrest, police officers found Plaintiff passed-out drunk).  Regardless of whether Plaintiff's statements and conduct ultimately support convictions for harassment and terroristic threats, the "personal responsibility" and "bad faith" factors weigh heavily in favor of dismissal under Rule 41(b).

   *Poulis* factor 2, prejudice to Defendants, also favors dismissal.  To the best of the Court's knowledge, Plaintiff currently remains incarcerated, and he already has expressed doubts regarding his ability to timely litigate this case during his incarceration.  *See* Doc. 12 at 4

("Plaintiff has been indigent and lacked [sufficient] commissary [funds] to even correspond until recently"). Plaintiff has requested a "liberal extension of time," of unspecified length, and a grant of such relief undoubtedly would prejudice Defendants' interests in proceeding with this litigation in a prompt and effective manner.

*Poulis* factor 5, the potential effectiveness of sanctions other than dismissal, likewise favors dismissal. The only alternative sanction suggested by Plaintiff, or that can be fathomed by the Court, is to indefinitely delay this litigation until Mr. Dec is released from incarceration and/or obtains sufficient funds to timely pursue his claims. Given the conduct leading to Plaintiff's predicament, the Court does not believe that indefinitely delaying his litigation is an appropriate alternative sanction.

Finally, *Poulis* factor 6, the potential meritoriousness of Plaintiff's claims, favors dismissal. As best as the Court can discern, Mr. Dec's lawsuit relates to charges of criminal trespass brought against him in Butler County, Pennsylvania. *Compare* Butler Cty. Comm. Pls. Ct., Dkt. Nos. CP-10-MD-0000039-2009 and CP-10-MD-0000404-2009 (Mr. Dec charged with "Criminal Trespass" for events transpiring in August 2008; case proceeded before Judge Lewis E. Stoughton)[1] *with* Compl. (Doc. 2) at ¶¶ 7(r) & 21 (referencing hearing before Judge Stoughton, and suggesting that trespass charge remains pending in state court); *see also* Compl. at Wherefore clause, ¶ 7 (asking this Court to grant "[i]njunctive relief" in connection with criminal trespass proceeding).

---

[1] The Court takes judicial notice of the above-referenced state court dockets. <u>Kalomiris v. Monroe County Syndicate</u>, 2009 WL 73785, *2 n.8 (M.D. Pa. Jan. 8, 2009) (citations omitted).

According to Plaintiff, the trespass charge resulted from actions taken by the manager of the apartment complex in which Ms. Dec resided. *See* Compl. at ¶ 7(b). The manager allegedly "began to harass [his] wife" by "falsely notifying HUD" that Mr. Dec was residing in her apartment, thereby threatening her eligibility for Section 8 housing. *See id.* at ¶¶ 7(b), (d). Plaintiff claims that the manager contacted HUD in retribution for Ms. Dec's having "rebuked [the m]anager's personal secretary for engaging in lesbian activities . . . in from of [Ms. Dec's] son and neighboring children." *Id.* at ¶ 7(e).

According to Plaintiff, the manager sent him a certified letter forbidding him from visiting the leased property. *See id.* at ¶ 7(h). Although Plaintiff's aunt signed for the letter, she never gave it to Plaintiff, and he thereafter appeared at the rental property to watch over Ms. Dec's eight year old son. *Id.* at ¶¶ 7(i), (j).

The apartment complex's "[m]aintenance man[,] who spies upon residents [by] watching who they invite over as well as digging through their trash, suspected Plaintiff was present at [his w]ife's leased home," and the state police "were ordered" by the maintenance man to enter the rental property "illegally," without a warrant. *See id.* at ¶¶ 7(k)-(n). Plaintiff was found there, and, although the police officer was not going to charge Plaintiff, the officer was "ordered by [the apartment] manager to prosecute [Plaintiff] for simple trespass." *Id.* at ¶¶ 7(o)-(p).

On the basis of these events, and his subsequent criminal prosecution(s), Plaintiff purports to state claims against the apartment manager, the owner of the apartment complex, the Pennsylvania State Police, three state judges, the U.S. Attorney's Office and the FBI (the federal entities, for failing to investigate Plaintiff's complaints regarding the state actors). *See* Compl.

Although Plaintiff does not currently enjoy *in forma pauperis* ("IFP") status,

he unquestionably seeks to proceed under the IFP statute. *Compare* May 5ᵗʰ Order at ¶ A

(vacating prior Order granting IFP status) *with* Pl.'s Doc. 12 (claiming indigence and requesting

extension of time to re-file IFP application). Under the IFP statute, the Court is required to

dismiss a complaint "that is frivolous or fails to state a claim." Young v. Young, 2009 WL

1106747, *2 (W.D. Pa. Apr. 23, 2009) (Cercone, J.) (citation omitted). A complaint is frivolous

where it relies on "fantastic or delusional scenarios," or where the court "determines that the

claim[s are] of little or no weight, value, or importance, not worthy of serious consideration,

or trivial." *Id.* (citation to quoted source omitted).

In many respects, Plaintiff allegations and legal theories qualify as frivolous. *See, e.g.*,

Compl. at pg. 3 of 36 (alleging "treason"); *id.* at ¶¶ 7(k), 7(n) (claiming that maintenance man,

who "spies" on residents by tracking their visitors and digging through their trash, "ordered"

police to "illegally enter[]" Ms. Dec's rental unit); *id.* at ¶ 30 ("Indeed, what shall we say? Give

Pol Pot (the Cambodian communist mass murderer) a black robe, let him lie upon his Oath of

Office, let him wage deliberate war against the Constitutional Rights of American Citizens,

obstruct justice, destroy their lives, and grant him the absolute immunity of a Roman Emperor?")

(parenthetical comment in original); *id.* at ¶ 40(c) (arguing against judicial immunity because it

applies "regardless of how evil, how communist, how maliciously, how criminally, [or] how

unconstitutionally [judges] act"); *cf. also* Pl.'s Doc. 12 at 4 (requesting that court enter

"a *sua sponte* injunction . . . upon [the] FBI (preferably the lady to whom [Plaintiff] spoke)

to investigate this affair").

The fantastic nature of Plaintiff's pleadings aside, legal impediments to his presumed claims abound. *See, e.g.,* Defs.' Br. in Supp. of Mot. to Dismiss (Doc. 8) (asserting judicial immunity regarding claims brought against Defendant-judges). Indeed, most, if not all, of Plaintiff's conceivably cognizable claims appear barred under the *Rooker-Feldman* doctrine and/or Heck v. Humphrey. *Compare* discussions *supra* (Plaintiff's claims arise out of, or relate to, his criminal trespass charge in state court) *with, e.g.,* Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 192 (3d Cir. 2006) ("a federal action is inextricably intertwined with a state adjudication, and thus barred in federal court under [*Rooker-]Feldman*, [w]here federal relief can only be predicated upon a conviction that the state court was wrong") (citation to quoted source omitted); Lora-Pena v. F.B.I., 529 F.3d 503, 505 (3d Cir. 2008) ("if judgment in favor of a plaintiff in a civil suit under [Section] 1983 would necessarily imply the invalidity of a prior criminal conviction, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated") (citing Heck v. Humphrey, 512 U.S. 477, 484-87 (1994)).[2]

Thus, after a careful weighing of the *Poulis* factors,[3] IT IS HEREBY ORDERED that this case is DISMISSED under Federal Rule of Civil Procedure 41(b).[4]

---

[2] Given that Plaintiff asks this Court to enter "[i]njunctive relief" in connection with state court criminal proceedings, the undersigned has no reason to believe that a state conviction or sentence has been invalidated. *See* discussion *supra*.

[3] As to factor (3), Plaintiff's history of dilatoriness weighs neither in favor of nor against dismissal. Although one month expired between the Court's May 5th Order and Mr. Dec's recent filings, his inability to respond earlier resulted from his arrest and imprisonment for harassment and terroristic threats. *See* discussion *supra* in text.

[4] Any preclusive effect afforded to the instant Order of Dismissal applies with equal force to Ms. Dec. Mr. Dec's unsworn, unsubstantiated assertions of fear of retaliation notwithstanding,

IT IS SO ORDERED.



June 15, 2010                                    s\Donetta W. Ambrose
                                                 Donetta W. Ambrose
                                                 United States District Judge

cc (via First-Class U.S. Mail):

Matthew P. Dec
202 Campbell Ave.
Butler, PA 16001

Matthew P. Dec
Butler County Prison
202 S. Washington St.
Butler, PA 16001

Lisa A. (Weisenstein) Dec
200 Cottage Hill Ave.
Butler, PA 16001


cc (via CM/ECF):

All Counsel of Record for Defendants

---

Ms. Dec has neither prepared nor signed any pleading or document in this case. *See generally*
May 5th Order at 1-2 (highlighting that Ms. Dec had not signed application for IFP or Complaint,
and advising Ms. Dec that Mr. Dec could not appear on her behalf); *see also* discussion *supra*
in text (Ms. Dec did not sign documents submitted by Mr. Dec in response to Show Cause
Order).  To the extent that Ms. Dec actually wished or intended to participate in this lawsuit,
the dismissal of her putative claims is warranted under *Poulis* for failure to prosecute.
Specifically, dismissal is warranted under *Poulis* factors (2), (3), (5) and (6), given Ms. Dec's
failure to participate and the non-meritoriousness of the claims asserted.